IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE FARM FIRE & CASUALTY CO., *Plaintiff*, v. BRIGHTON EXTERIORS, INC., *Defendant*. | CIVIL ACTION NO. 14-03987 |

MEMORANDUM

**PAPPERT, J.**                                                                                       **March 2, 2015**

Plaintiff State Farm Fire & Casualty Company ("State Farm") insures Defendant Brighton Exteriors, Inc. ("Brighton") under a contractors policy and a commercial liability umbrella policy. Brighton was subcontracted by the Heritage Construction Company ("Heritage") to perform stucco work on a home purchased by Edward and Jennifer Coates. According to the Coateses, the home suffered from numerous defects, including problems with the stucco work. They sued a number of companies involved with the construction and sale of the home, including Heritage, in state court (the "Coates litigation"). Heritage in turn sued Brighton. State Farm has been providing Brighton a defense in the Coates litigation pursuant to a reservation of rights.

State Farm filed a declaratory judgment action in this Court seeking a declaration that it does not owe Brighton a duty to defend or indemnify it in the Coates litigation. Before the Court is State Farm's motion for summary judgment. For the reasons provided below, the Court concludes that State Farm owes no duty to Brighton to defend or indemnify it in the Coates litigation and grants State Farm's motion.

**Background**

    **I.**    **The Policies**

State Farm issued both a Contractors Policy ("Policy") and a Commercial Liability Umbrella Policy ("Umbrella Policy") to Brighton. (State Farm Mot. for Summ. J. ¶¶ 6-7.) A number of provisions of the Policy and Umbrella Policy are at issue here.

The Policy includes business liability coverage:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies. . . . This insurance applies only:
>
> 1.    to **bodily injury** or **property damage** caused by an **occurrence** which takes place in the **coverage territory** during the policy period;
>
> 2.    to **personal injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
>
> 3.    to **advertising injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must be committed in the course of advertising your goods, products or services.

(Compl., Ex. A, Policy at 18) (emphasis in original). The Umbrella Policy also includes business liability coverage:

> If you are legally obligated to pay damages for:
>
> 1.    **bodily injury;**
>
> 2.    **personal injury;**
>
> 3.    **property damages;** or
>
> 4.    **advertising injury,**

>to which this insurance applies, we will pay your **net loss** minus the **retained limit**. . . . This insurance applies only:
>
>>1. to **bodily injury** or **property damage** caused by an **occurrence** which takes place in the **coverage territory** during the policy period;
>>
>>2. to **personal injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you; . . . .

(Compl., Ex. B, Umbrella Policy at 1) (emphasis in original).

>The Policy and Umbrella Policy both define "occurrence" as:
>
>>a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in **bodily injury** or **property damage**; or
>>
>>b. the commission of an offense, or a series of similar or related offenses, which results in **personal injury** or **advertising injury**.
>>
>>For purposes of this definition, **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property will be considered an accident[.]

(Policy at 29; Umbrella Policy at 12) (emphasis in original).

>Finally, the policies provide that property damage means:
>
>>a. physical injury to or destruction of tangible property, including all resulting loss of use of that property. All such loss of use will be considered to occur at the time of the physical injury that caused it; or
>>
>>b. loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property. All such loss of use will be considered to occur at the time of the **occurrence** that caused it[.]

(Policy at 30; Umbrella Policy at 13) (emphasis in original).

3

## II. The Coates Litigation

Edward and Jennifer Coates sued Heritage-Lederach, L.P., Heritage-Lower Salford, L.P., HBG-Lower Salford, Inc., Heritage Construction Co., Inc., Heritage Building Group, Inc., and HBG-Lederach, Inc. ("Heritage defendants") in the Montgomery County Court of Common Pleas. (Compl. ¶ 35.)  The Coateses purchased a home from the Heritage defendants based on representations that the homes were of superior quality, would be built to their total satisfaction, and would be constructed of the most durable material.  (Compl., Ex. C, Coates Compl. ¶¶ 8-11.)  At the time of the agreement of sale, the Coateses were also provided a builders limited warranty and a homeowner guide.  (*Id.* ¶¶ 12-13.)  After the Coateses entered into the agreement of sale, they discovered numerous defects with the property, including leaking windows and doors, and moldy stucco.  (*Id.* ¶¶ 19-31.)  The Heritage defendants agreed to fix the defects, but they failed to replace the stucco according to code and failed to properly repair the defective windows and doors.  (*Id.* ¶¶ 23-27.)  After closing, the Coateses discovered more defects and requested that the Heritage defendants fix them.  (*Id.* ¶¶ 32-33, 35-36.)  Heritage's failure to correct the defects caused additional damage to the home.  (*Id.* ¶¶ 38-40.)  The Coateses subsequently put their home up for sale, but were unable to sell it because of the defects.  (*Id.* ¶¶ 42-43.)

The Coateses sued the Heritage defendants for breach of contract, breach of warranty, violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, negligence, and infliction of severe emotional distress.  *See Coates v. Heritage-Lederach, LP*, No. 2009-00370 (Pa. Ct. Com. Pl., Mont. Cnty.).  The negligence and infliction of severe emotional distress claims were dismissed with prejudice. (State Farm Mot. for Summ. J. ¶ 20.)

The Heritage defendants subsequently filed a joinder complaint against a number of entities, including Brighton.  (Compl. ¶¶ 42-43.)  The Heritage defendants alleged that Brighton

was "responsible for performing the stucco remediation skillfully, carefully, diligently, and in a workmanlike manner. (Compl., Ex. D, Joinder Compl. ¶ 6.) The Heritage defendants claimed that if the Coateses' allegations were true, Brighton breached its warranty to Heritage Construction Company and Brighton is liable for damage to the home. (*Id*. ¶¶ 8-10.) The joinder complaint also requested contractual and common law indemnification. State Farm has been providing Brighton a defense in the Coates litigation pursuant to a reservation of rights.

**Standard of Review**

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The nonmoving party can demonstrate a genuine issue of material fact by providing evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

**Discussion**

Under Pennsylvania law, insurance contract interpretation, including questions of coverage, is a question of law for the court. *401 Fourth St., Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). The ultimate aim is to ascertain the intent of the parties as expressed by the language of the contract. *Id*. The policy must be read as a whole and its meaning construed according to its plain language. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999); *see also Giancristoforo v. Mission Gas & Oil Prods., Inc.*, 776 F. Supp. 1037, 1041 (E.D. Pa. 1991) ("The policy must be construed as a whole, not in discrete units.").

A court must enforce the clear and unambiguous language in an insurance policy. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999) (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). A court should read a policy to avoid ambiguities and give effect to all of its provisions. *Id.*; *see also Little v. MGIC Indem. Corp.*, 836 F.2d 789, 793 (3d Cir. 1987). If, however, the language of the policy is open to multiple interpretations, it is ambiguous and must be construed against the insurer as the drafter of the contract. *Watkins*, 198 F.3d at 103; *see also Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

### I.     The Duty to Defend

At issue here is the insurer's duty to defend, which is broader than the duty to indemnify. *Frog*, 193 F.3d at 746. The duty to defend is assessed by comparing the complaint to the policy. *See Gene's Rest., Inc. v. Nationwide Ins. Co.*, 548 A.2d 246, 246-47 (Pa. 1988); *United Servs. Auto Ass'n v. Elitzky*, 517 A.2d 982, 985 (Pa. Super. Ct. 1986). The factual allegations in the underlying complaint must be taken as true and liberally construed in favor of the insured. *Frog*, 193 F.3d at 746 (citing *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1052 (Pa. Super. Ct.

1992)).  The duty to defend arises if "the allegations in the complaint . . . could potentially fall within the coverage of the policy."  *Victoria Ins. Co. v. Mincin Insulation Servs., Inc.*, No. 08-cv-909, 2009 WL 2998144, at *2 (W.D. Pa. Sept. 15, 2009); *see also Sphere Drake P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999).  This rule applies even when the lawsuit is "groundless, false, or fraudulent."  *Britamco Underwriters, Inc. v. Weiner*, 636 A.2d 649, 651 (Pa. Super. Ct. 1994); *see also D'Auria v. Zurich Ins. Co.*, 507 A.2d 857, 859 (Pa. Super. Ct. 1986) ("It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend.").

When determining whether a third-party complaint triggers coverage, the court focuses on the complaint's factual allegations, not the terminology used to name the causes of action.  *Markel Int'l Ins. Co. v. 2421 Salam, Inc.*, Nos. 08-cv-1052 & 08-cv-2484, 2009 WL 1220557, at *2 (E.D. Pa. Mar. 31, 2009) (citing *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)).  The insurer bears the burden of showing that a policy exclusion applies.  *See Allstate Ins. Co. v. Brown*, 834 F. Supp. 854, 857 (E.D. Pa. 1993).  If a policy exclusion applies, there is no duty to defend or indemnify.  *Markel Int'l*, 2009 WL 1220557, at *3.

Assessing the duty to defend requires a two-step analysis.  First, the court must examine the language of the insurance policy to determine the scope of coverage.  *See Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 596 (3d Cir. 2009).  Next, the court must analyze the complaint in the underlying litigation to determine if the claims potentially fall within the scope of coverage.  *See id.*; *see also Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683, 692 (E.D. Pa. 2012).

### A.     *The Scope of Coverage*

The issue of insurance coverage for faulty workmanship has arisen numerous times before, with courts consistently ruling that faulty workmanship is not covered by insurance policies similar to those here.

In *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co.*, 908 A.2d 888 (Pa. 2006), the Pennsylvania Supreme Court was faced with an insurance coverage dispute that required an interpretation of the word "occurrence." Kvaerner, the insured, entered into an agreement with the Bethlehem Steel Corporation ("Bethlehem") to design and construct a coke oven battery. *Id*. at 891. A number of issues were discovered with the coke oven battery and Bethlehem sued Kvaerner for breach of contract and breach of warranty. *Id*. Kvaerner notified its insurance carrier, but the carrier disclaimed coverage because the policy covered property damage only if the damage was caused by an occurrence, which the policy defined as "an accident, including continuous or repeated exposure to substantially the same or general harmful conditions." *Id*. at 897.

The court held that "the definition of 'accident' under the policies cannot be satisfied by claims based upon faulty workmanship." *Kvaerner,* 908 A.2d at 899. According to the court, an "accident" required a degree of fortuity not covered by faulty workmanship. *Id*. at 898. Thus, an insurer owed no duty to defend against a lawsuit that alleged only property damage from poor workmanship to the work product itself. *Id*. at 900.

The holding in *Kvaerner* was expanded in *Miles Capital Insurance v. Gambone Brothers Development Co.*, 941 A.2d 706 (Pa. Super. Ct. 2007). In *Gambone*, the insured tried to distinguish *Kvaerner* by arguing that the underlying lawsuits against Gambone Brothers did not "merely involve claims for faulty workmanship . . . but also involve claims for ancillary and

accidental damages . . . to non-defective work inside the home interiors." *Id*. at 713. The court rejected the insured's argument. *Id.* Ultimately, the court decided that damage caused by rainfall that seeped through faulty home exterior work to damage the interior of the home was not a fortuitous event that would trigger coverage. *Id*. at 714. According to *Gambone*, "occurrence" referred to accidental phenomena and did not include claims based on allegations of faulty workmanship. *Id*. at 718.

The Third Circuit reads *Kvaerner* and its progeny to stand for the proposition that "faulty workmanship under a contract is not sufficiently fortuitous to qualify as an 'occurrence.'" *Zurich Am. Ins. Co. v. R.M. Shoemaker Co.*, 519 F. App'x 90, 92-93 (3d Cir. 2013). The Third Circuit also noted in *Zurich* that "*Gambone* specifically rejected the argument that faulty workmanship by a subcontractor may constitute an 'occurrence' or 'accident' from the perspective of the contractor." *Id*. at 93 ("Faulty workmanship—whether caused by the contractor's negligence alone or by the contractor's negligent supervision, which then permitted the willful misconduct of its subcontractors—does not amount to an 'accident' or 'occurrence.'"). This logic applied to faulty workmanship cast as a negligence claim. *Id*. at 94; *accord Westfield Ins. Co.*, 856 F. Supp. 2d at 701 ("Pennsylvania law explicitly declines to recognize this type of [faulty workmanship] claim as accidental in nature, regardless of the framework in which it is cast.").

Under Third Circuit precedent, there is no duty to defend even if the alleged faulty stucco work causes additional damage. *See Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 239 (3d Cir. 2010) (noting that natural and foreseeable acts that exacerbate damage, effect, or consequences caused originally by faulty workmanship fail to qualify as occurrence or accident).

Based on these cases, the Court concludes that the term "occurrence" does not include claims that arise from faulty workmanship, regardless of whether the claims are phrased as contract or negligence claims.

### B.     The Underlying Litigation

Having decided the scope of coverage afforded by the policies, the Court must examine the underlying complaint to determine whether its allegations trigger coverage. *See Westfield Ins. Co.*, 856 F. Supp. 2d at 694.

This case is similar to a case recently decided in this District, *State Farm Fire & Casualty Co. v. McDermott*, No. 11-cv-5508, 2014 WL 5285335 (E.D. Pa. Oct. 14, 2014) (Tucker, C.J.). State Farm issued a number of comprehensive business liability insurance policies to Patrick McDermott ("McDermott"), who ran a plaster and stucco company. *Id*. at *1. McDermott's business entered into an agreement with builder PulteGroup to plaster/stucco and install window flashing, door flashing, and felt paper for numerous homes in a residential community. *Id*. PulteGroup learned that McDermott's substandard work caused water intrusion to become an ongoing and recurring issue for the homes. *Id*. PulteGroup faced a number of lawsuits from residents and, in turn, PulteGroup sued McDermott. *Id*. McDermott requested defense and indemnification from State Farm. *Id*. at *2. State Farm sought a declaration that it owed McDermott no duty to defend or indemnify because the allegations in the complaint against McDermott did not qualify as an occurrence as required by the insurance policies. *Id*. The policies at issue in *McDermott* include language identical to those here.

The court, relying on *Kvaerner* and *Gambone*, concluded that State Farm owed no duty to McDermott to defend or indemnify. *Id*. at *8-9. McDermott had agreed to perform his work in a satisfactory manner; moreover, the allegations in the complaint—even those phrased as

10

negligence claims—accused McDermott of faulty workmanship. *Id*. Such claims did not constitute an occurrence. *Id*. ("Here, regardless of how it is framed in the underlying PulteGroup Complaint, McDermott's potential liability stems from his alleged failure to meet expectations which he was contractually obligated to meet. Whether McDermott failed to meet his obligations through negligence or willful shortcuts does not control this analysis."); *see also Roman Mosaic & Tile Co. v. Liberty Mut. Ins. Co.*, No. 11-cv-6004, 2012 WL 1138587, at *5-6 (E.D. Pa. Apr. 5, 2012) (granting summary judgment to insurance company in case in which facts alleged faulty workmanship although the underlying complaint was styled as a negligence action).

Similarly here, the Coateses allege in their joinder complaint that Brighton had a contractual obligation to perform acceptable stucco work and that Brighton's failure to perform as required caused the damage to their home.

Even liberally construing the factual allegations here and resolving all doubts as to coverage in favor of the insured, there is no duty to defend or indemnify. The factual allegations in this case mirror those in the cases where courts have refused to find a duty to defend. Regardless of whether the claims are phrased as negligence, breach of warranty or breach of contract claims, the underlying litigation concerns faulty workmanship. The damages alleged by the Coateses are directly related to allegedly inferior stucco work. The Court accordingly concludes that the factual allegations in the underlying litigation do not trigger coverage. State Farm is therefore entitled to a declaration that it does not owe a duty to defend or indemnify Brighton in the Coates litigation.

An appropriate Order follows.

/s/ *Gerald J. Pappert*
GERALD J. PAPPERT, J.